THE COMMERCIAL BANK OF KENTUCKY, Respondent, *v.* JOSEPH B. VARNUM, Appellant.

(GENERAL TERM, FIRST DEPARTMENT, JULY, 1870.)

In order to fix the liability of the indorser of a foreign bill of exchange, both the presentation and protest thereof must be by the same notary. And both of these acts must be performed by the notary in person.

The M. bank of N. Y. intrusted to its usual notary, for the purpose of presentation and protest, a bill of exchange drawn on the P. bank of the same place, by a firm at St. Louis, Mo., and belonging to, and sent to the M. bank for collection by, the plaintiff; the notary procured his partner, also a notary, to make the demand, but made the protest himself.—*Held,* that the protest was insufficient, and that notice thereof sent to the indorser did not charge him.

*Held,* further, that the notary was liable (under 2 R. S., 284, § 48), in an action by the plaintiff for the damages sustained.

It seems, that the plaintiff's action against the notary was only maintainable under the statute.

It seems, that if the protest is formally " noted," an actual protest is not necessary before notice, but is sufficient if made before suit brought.

It seems, that a certificate, stating that a note was presented at a time named, payment thereof demanded and refused and the same protested, which runs in the name of a notary who is a partner in the notarial business of the notary who actually made the presentment, &c., and is entered in the firm register by the latter's direction, and signed by the notary named in the certificate, while the other adds his initials upon the margin to signify that he presented the note, is not a legal " noting of the protest."

So far as the duty of a notary is determined by statute, or upon authority, evidence of a custom among notaries, contrary to such duty, is inadmissible in evidence to excuse his official action.

A bill of exchange, payable four months after date, and drawn upon a banking association, or individual banker, is within the statute (Ls. 1857, chap. 416), which abolishes days of grace in certain cases.

THIS was an appeal from a judgment entered upon the decision of Mr. Justice MULLIN, before whom the action was tried, without a jury. The action was commenced in February, 1866.

The plaintiff was a banking corporation, located and doing business at Paducah, in the State of Kentucky. The defendant was a notary public, in the city of New York, and was the duly appointed notary of the Metropolitan Bank, in that city: and employed by it to transact all the business of the bank in the protesting of commercial paper which required the employment of a notary. His arrangement with the bank was, to receive all such paper, and either protest it himself, or have it properly protested.

On the 4th day of September, 1860, W. H. Barkesdale & Co., a firm doing business in the city of St. Louis, Mo., drew their draft or check, dated at St. Louis, upon the Park Bank, New York, for the sum of $10,000, payable to the order of John F. Darby, four months after date, as follows:

" $10,000.          ST. LOUIS, Mo., *September 4th*, 1860.

"Four months after date, pay to the order of John F. Darby, acceptance waived, ten thousand dollars, for value received.

"W. H. BARKSDALE, & CO.

"To PARK BANK, New York."

Darby indorsed the draft, and it was discounted by the plaintiff. The plaintiff sent the draft, properly indorsed by its president, to the Metropolitan Bank of the city of New York, for collection, that bank being the regular correspondent of plaintiff, to whom all its acceptances, and bills, payable in said city, were sent for collection and credit.

On the 5th of January, 1861, on which day the draft became payable, it was received by the defendant from the Metropolitan Bank, for demand and protest. The defendant

was at that time in partnership with P. W. Turney, in the law and notarial business, and the firm were also the attorneys of the bank.  Mr. Turney was also a notary public, and their fees as notaries were shared equally between them.  On the 5th of January, 1861, some fifty other notes and bills were also delivered to defendant for demand and protest, and he was unable to present or give his personal attention to all of them.  He handed the draft to Mr. Turney, who presented and demanded payment of the same at the Park Bank.  Payment was refused; and on the same day Mr. Turney caused an entry in the protest register of the firm, to be made by one of the firm clerks, adding his own initials (to signify as he testified that he presented the draft) upon the margin, which was signed by the defendant, and was as follows, viz. :

"STATE OF NEW YORK,    }
*City and County of New York,* }  *ss :*

"On the fifth day of January, in the year one thousand eight hundred and sixty-one, at the request of The Metropolitan Bank, I, Joseph B. Varnum, Jr., a notary public for the city and county of New York, did present the original [P. W. T.] draft, of which the above is a copy, to the cashier, of the Park Bank in said city, being the place where the same is payable, and demanded payment thereof, which was refused; whereupon I duly protested the same for non-payment.

"Notice of said protest was given as follows : January 7th, mailed to L. M. Flournoy, Pt., Paducah, Ky., to all parties, and duplicate to drawers, St. Louis, Mo.

"J. B. VARNUM, Jr.,<br>"*Notary Public.*"

On the same, or the next day, the defendant made out a certificate of protest, and notices for the drawers and indorsers, and sent the same by mail to the plaintiff at Paducah, and to Barkesdale & Co., at St. Louis.  The notice for the indorser, Darby, was sent to the plaintiff.

On the 7th day of January, 1861, the draft was mailed by the cashier of the Metropolitan Bank to the plaintiff at Paducah, and about or nearly a month after the date of the notice, it was received by Darby, the indorser, through Barkesdale & Co. The drawers were insolvent in January, 1861, but Darby, the indorser, was solvent. The plaintiff brought suit in the Common Pleas of St. Louis against the drawer and indorser, and the court discharged the defendant from liability upon the ground, that the defendant did not personally present the bill for payment, and that the acts of Turney did not amount to a protest. (36 Mo., 563.) While that suit was pending, and before its trial, a certificate of protest in due form, was made by Mr. Turney, as notary public, and delivered to the attorneys for the plaintiff, and Messrs. Varnum and Turney, wrote to said attorneys, advising them of the usage in the city of New York, to present and demand bills by the clerks of notaries, etc. Evidence offered to establish a custom in the city of New York, to treat bills of exchange drawn upon persons in this State from other States of the Union as inland bills, and protest them upon presentation by notaries' clerks, was excluded by the court under defendant's exception. The defendant's counsel offered to prove a universal usage and custom in the city of New York among all persons connected with or transacting business with bankers or banks therein, and with the notaries public therein to protest all bills of exchange, foreign or inland, and promissory notes, upon the presentment or demand of payment by a clerk or agent of the notary employed, &c. The court refused to receive the evidence, and defendant's counsel excepted.

The court held in substance that defendant was liable for the whole amount of the bill, under the provisions of the statute (2 R. S., 284, § 48), declaring a notary liable for misconduct in his office to any party injured thereby; that the instrument was a foreign bill of exchange; that it must have been personally presented and demanded by defendant and protested by him; that the acts of Turney did not amount to

a valid protest of the bill; that defendant was guilty of misconduct within the meaning of the statute for not presenting and demanding the bill in person. The defendant duly excepted to both the findings of fact and conclusions of law. [For opinion of Mr. Justice MULLIN, see note.)

---

NOTE.—MULLIN, J. The bill of exchange in question in this suit was sent by the plaintiff to the Metropolitan Bank of New York for collection, and by it delivered to the defendant, a notary public, for presentment; and if not paid, then to be protested. The failure of the defendant to make presentment, whereby the plaintiff has lost its remedy over against the indorser of the bill, is the gravamen of the action.

The defendant insists, as his first defence to the action, that if the matters charged in the complaint be taken to be true, he is, nevertheless, not liable to the plaintiff. He was the agent of the Metropolitan Bank, and is liable to it only for any neglect of duty in relation to the protest of the bill.

The general rule, undoubtedly, is, that a sub-agent is only responsible to the person from whom he received his appointment; in other words, he is the agent of the agent, and not of the principal. (*Allen* v. *Merchants' Bank*, 22 Wend., 215; *Montgomery Co. Bank* v. *The Albany City Bank*, 3 Seld., 459.)

The plaintiffs' counsel concedes the general rule to be as stated, but insists that it has no application to the case of a sub-agent, who is a public officer, whom the agent was compelled to employ; and that the rule only applies to the cases of sub-agents, over whom and whose appointment and removal the agent has control.

In support of the proposition as thus stated, I am referred to the case of *Allen* v. *Merchants' Bank* (*supra*); *Smedes* v. *The Bank of Utica* (20 J. R., 383); same case in Court of Errors (3 Cow., 673); *Wilson* v. *Smith* (3 How. U. S. R., 763); *Baker* v. *Prentice* (6 Mass., 430); *Bank of Metropolis* v. *New England Bank* (1 How., 234); *Lawrence* v. *Stonington Bank* (6 Cow., 531); *Raney* v. *Weed* (3 Sandf. S. C. R.), and several cases from the Ohio and Indiana State reports. As the latter are not accessible, I have not had the means of ascertaining how far they sustain the counsel's position.

In *Allen* v. *The Merchants' Bank*, the action was brought to recover damages, resulting from the neglect of a notary, to whom a bank in Philadelphia had delivered a note, transmitted to it by the defendant for collection, to notify the indorsers, whereby the debt was lost.

The Supreme Court held that the defendant discharged its duty to the plaintiff when it delivered the notes to its corresponding bank in Philadelphia, and that the notary and not the defendant was liable for neglect of duty.

The Court of Errors reversed the judgment, holding that an agent, receiving a note or bill for collection, is liable to the owner for the laches of the

*H. E. Davies, and Noah Davis,* for the appellant, insisted with other points, as follows:

The defendant owed no duty to the plaintiffs in respect to the discharge of his duty in reference to the protest.   He

agents employed by it in effecting the collection or protest of the bill or note, and giving notice to the parties liable, in the event of non-payment by the maker or acceptor.

Senator Verplanck, in the course of an elaborate opinion, referring to the suggestion of counsel that the misconduct charged in the case was that of a public officer, and that he, and not the defendant, was answerable to the plaintiff for whatever damages resulted from it to the plaintiff, says: "If this laches had been committed by the officer in that part of his duty which was peculiarly official, and could only be performed by himself or some other notary, he having been requested or instructed to perform such duty I doubt whether the collecting bank, or any other institution or person employing him, would be responsible for his neglect in that which was not voluntarily confided to him, but wherein his official duties were rendered necessary by the requirements of the law, and when his employer had done all that was within his power for the performance of the original undertaking, then it would seem that the notary would alone be responsible."

The learned senator, however, was of the opinion that as the laches were, in performance of a part of the duty imposed upon him, which could have been performed by any other person, it was not such an official act as brought the case within the principle which made the notary and not the bank to which the bill was delivered liable for the neglect to charge the indorsers.

The proposition relied upon by the counsel was not therefore decided, and it stands as a mere dictum, but the dictum of a distinguished jurist.

In none of the other cases cited by the plaintiffs' counsel was the question under consideration considered or even suggested, except in *Raney* v. *Weed* (3 Sandf. S. C. R., 577).

In that case the defendant had recovered a judgment in the Circuit Court of the United States, in Michigan. Execution thereon was issued to the deputy marshal, who seized and advertised in a newspaper published by the plaintiff the sale of the property seized by virtue of the execution, and it was for this service this action was brought. The plaintiffs' counsel claimed to recover on the ground that the deputy marshal was the agent of the defendant in all proceedings to enforce the execution. But the court repudiated the doctrine, and held that the relation of principal and agent does not subsist between the plaintiff in an execution and the deputy of a sheriff. DUER, J., goes farther, and gives it as his opinion that an agent is not responsible for the laches of a sub-agent, which from custom or the nature of the business to be done, a sub-agent or public officer must be employed

was employed by the Metropolitan Bank, and no privity of contract existed between him and the plaintiffs.   The Metro-

to perform.  After remarking that the relation of principal and agent results from contract, and is therefore purely voluntary, the learned judge proceeds and says; " It is the will of the principal that fixes the limit of his (the agent's) authority, regulates its exercise and determines its existence.  The principal appoints, directs, controls, removes him.  It is plain that these observations cannot be applied to the relation between the marshal or sheriff and the suitors, &c."

It is perfectly just that he who employs an agent should be responsible for the acts within the scope of the authority of the person whom he selects, trusts and controls, but it is not just that any person should be responsible for the acts of a public officer whom, without regard to his own wishes, the law commands, and unless he chooses to abandon his rights, compels him to employ.

In Story on Agency, 313, it is said that an action will not lie against an agent for the misfeasance or the negligence of those whom he has retained for his principal, any more than it will lie against a servant who hires laborers for his master for their acts.

Parsons, in his work on Contracts, page 84, says : "A substitute appointed by an agent who has the power of substitution, becomes the agent of the principal, and may bind him by his acts, and is responsible to him as his agent, and may look to him for compensation."

These authorities, and others to the same effect, are in conformity with the law, as laid down by the Supreme Court, in *Allen* v. *The Merchants' Bank* (15 Wend.), and which was expressly overruled by the Court of Errors in the same case in the 22 Wend., *supra*.

It will be observed that when it is said that sub-agents are liable to the principal for their misconduct, it is confined to a case in which, from custom, or the nature of the business to be done, the principal knows that sub-agents must be employed, or the law requires the duty to be done by the agent appointed or elected under its authority, and over whom the agent has no control or power of removal, yet there are exceptions to this rule.

The master or owner of a ship is liable to third persons for loss or injury resulting from the neglect of the pilot, notwithstanding he is appointed by the State, and while in charge of the ship has absolute control of her, the power of the captain being for the time suspended. (*Denison* v. *Seymour*, 9 Wend., 9.)

There is nothing left of the dicta to support the position of the plaintiff's counsel except the suggestion that when the agent, in the performance of the duty intrusted to him, is required to employ a public officer, and no other than such officer can perform it, then the officer is himself liable to the principal, and the agent is only liable for good faith in selecting one that is competent to perform the duty.

The Commercial Bank of Kentucky *v.* Varnum.

politan Bank was the agent of the plaintiffs for the collection of the check, or draft, and liable to them for any negligence

---

The principle, as thus modified, must, it seems to me, commend itself to every man's sense of right and justice. But yet I cannot perceive how it can be held to be the law, while the doctrine in *Allen* v. *The Merchants Bank* (22 Wend.), stands unreversed.

The Supreme Court assumed that when a note or bill is left with a bank for collection, the bank undertakes to forward it to the place where it is payable to some competent and responsible agent, to demand and receive payment, or to protest it for non-payment, and give notice thereof to the parties who are contingently liable on such paper.

The Court of Errors assumed the undertaking of the bank to be essentially different, that by receiving the bill for collection it became directly responsible for the misconduct of every agent employed in accomplishing the intended object.

The liability of a bank, undertaking to collect paper for a customer, is thus made as broad and as complete as if it should enter into a covenant to collect the paper. If a covenant is entered into, I apprehend that the bank would be liable for all persons, officers as well as private persons, who should be employed in the business of collection.

While I think an agent for collecting bills and notes should not be liable for the misconduct of public officers necessarily employed by it to perform some duty in regard to the business undertaken by the agent, yet it has not been so decided by our courts, but on the contrary the weight of authority seems to be against it, and I do not feel at liberty to so hold in the case. (Edwards on Bills, 464.)

Whatever may be the ultimate conclusion on the question of agency, I entertain no doubt but that if it shall be established that damage has resulted to the plaintiff from any misconduct of the notary, that he is personally and directly liable to it for all damage sustained, by virtue of 3 R. S., 5 ed., 474, § 37.

It is provided by that section, that for any misconduct in any of the cases where notaries public appointed by the authority of the State authorities to act, either by the laws of this State or any other State or country, by the laws of nations or commercial usage, they shall be liable to the parties injured thereby for all damages sustained.

It cannot be necessary to cite authorities to prove that a neglect of a well defined official duty is misconduct, within the meaning of this provision.

It is conceded that the defendant was the notary of the Metropolitan Bank, to whom it delivered all papers in its custody requiring presentment for acceptance or payment, and if not accepted or paid, then to be protested.

He received the bill in question, but did not present it for payment himself. He did cause it to be presented by his partner, Turney, also a notary, and defendant himself protested it for non-payment. For reasons which I

or default in the discharge of that duty by the said bank, as the agent of the plaintiffs, or for the default or negligence of

shall give more at large hereafter, I am of the opinion that the neglect to present was such misconduct as subjects the defendant to liability under this section of the statute above cited. Whether the bill was presented and protested by Turney, so as to charge the other parties to the bill, will also be considered hereafter.

The bill in question is a foreign bill, and in order to charge the indorser must have been presented and protested. (Story on Bills, § 23; Edwards on Bills, 47; 1 Parsons on Bills, 55; *Halliday* v. *McDougall*, 20 Wend., 81.)

If the question whether the bill is foreign or domestic can be said to be an open one in this State, it must be settled by the Court of Appeals. A judge sitting at circuit should not assume to overrule the great number of cases which declare a bill drawn in one State of the Union upon a person residing in another State a foreign bill.

Being a foreign bill, the presentment for payment must be made by a notary. (Story on Bills, § 276, and note 2, and cases cited; Edwards on Bills, 461; 1 Parsons on Bills, 642, and note 81 (c). The authority of the notary cannot be delegated unless permitted by some well established custom, of which custom the party affected had notice. (1 Parsons on Bills, 641, note a, and cases cited.)

The defendant offered on the trial to prove a custom among notaries in the city of New York, that presentment of bills and notes is made by their clerks. The evidence was objected to by the counsel for the plaintiff, and the question now is whether it is admissible.

The Court of King's Bench, as long ago as 1761, decided that evidence of a custom was inadmissible to overturn a rule of law which had been established by the courts. In *Edie* v. *The East India Company* (2 Burr, 1216), the defendants offered evidence of a custom among merchants, whereby when the indorsement of a bill of exchange omitted the words "or order," the indorsement was held to be restrictive, while it had been held by the courts to be negotiable when the bill itself was negotiable. Lord Mansfield said the point now in question has been already solemnly settled both in the Court of King's Bench and in Common Pleas, and therefore witnesses ought not to have been examined as to the usage after such a solemn determination of what was the law. All the judges concurred, and a new trial was granted.

In *Allen* v. *The Merchants' Bank*, the plaintiff was permitted to give evidence of a custom, that a bank receiving a note for collection became responsible for the acts of the agents employed by it, in the proceedings to collect.

NELSON, J., delivering the opinion of the Supreme Court, says this system of customs is of mercantile invention, devised for the convenience of business, and embodied into the common law for the benefit of trade and com-

The Commercial Bank of Kentucky *v.* Varnum.

any sub-agent employed by said bank in and about said business, citing *Allen* v. *The Merchant's Bank* (22 Wend., 215);

---

merce.  After the rule has been recognized at law, it is no longer under the control of mercantile usage, and the adjudication is the proper evidence of it.  It then becomes fixed and unalterable except by legislative authority.

The judgment of the Supreme Court in this case was reversed by the Court of Errors, but not as to the ruling on the question of usage.  On the contrary, I understand the chancellor, and Verplanck, Senator, to adopt the views of NELSON, J., on that point.

BRONSON, J., in *Hinlon* v. *Locke* (5 Hill, 437), says no usage or custom can be set up for the purpose of controlling the rules of law.

In *Thompson* v. *Ashton* (14 J. R., 316), it is said no custom in the sale of any particular description of goods can be admitted to control the general rules of law; such a principle would be extremely pernicious in its consequences, and render vague and uncertain all the rules of law.  On the sale of chattels, in *Beirne* v. *Dord* (1 Seld., 95), the correctness of the same principle is asserted.  (See also *Wheeler* v. *Newbold*, 16 N. Y., 392; *Higgins* v. *Moore*, 34 N. Y., 417; *Duguid* v. *Edwards*, 50 Barb., 288.)

In the case of *The Onondaga County Bank* v. *Bates* (3 Hill, 53), the question was distinctly raised whether a certificate of a notary that he caused a note to be presented at maturity was sufficient evidence of a demand to charge an indorser.

The court construed the certificate as certifying that the presentment had been made by a clerk of the notary or by some third person and not by the notary himself, and held that it was for that reason insufficient.

NELSON, J., refers to the authorities in support of the position that a notary's clerk might make presentment, and declares his concurrence in the opinion of Chitty, in his work on bills, that a presentment by a clerk was not authorized by law.

The decision in this case was approved in *Hunt* v. *Maybee* (3 Seld., 266.)

The sufficiency of a certificate that the notary had caused the note to be presented was again before the court in the case of *Warrick* v. *Crane* (4 Den., 460), and it was again held defective.  BEARDSLEY, J., says, in order to satisfy the statute (that of 1833, chap. 271, § 8), the certificate must show a presentment by the notary himself.  (See also the dictum of BRONSON, J., in *Sheldon* v. *Benham*, 4 Hill, 129.)

The duty of presenting, protesting and giving notice to parties contingently liable on commercial paper, and the true manner in which these several duties must be performed, had its origin in commercial usage, and rested on that usage until it was adopted and changed or modified by legislation.  When the courts ascertained and declared the usage, it was not thereafter subject to be altered except by legislation.  Custom may still be referred to, to ascertain what shall be done in a given case in regard to protesting, &c., a bill or note, when the courts have not ascertained and

id., 15 Wend., 486; *Bank of Orleans* v. *Smith* (3 Hill., 562); *Montgomery County Bank* v. *The Albany City Bank*

declared what the duty is in that particular case, but if the duty has been declared, evidence of a custom is wholly inadmissible.

The courts of this State had, as it will be seen, declared, long before this litigation arose, that a notary public could not transfer the authority vested in him as a public officer to a clerk or other person, and that negotiable paper must be presented by himself, and could not be presented by another authorized by him.

Within the principle of the authorities above cited, proof of a general custom since the case of *Thompson* v. *Ashton, supra,* for notary's clerks to make presentment of bills and notes has been incompetent.

It only remains to inquire whether proof of such local custom, as distinguished from a general custom, is admissible. In *Thompson* v. *Ashton* the cause of action arose in the city of New York, and on the trial the plaintiff, who had purchased certain crockery of the defendant, offered to show that it was the custom of merchants engaged in the purchase and sale of crockery to sell on the invoices without any examination of the contents of the crates in which it was packed, and that it was the uniform understanding that this exhibition of the invoices amounted to an undertaking on the part of the seller that the wares were good and merchantable. The action was case for damages, the property not being good or merchantable. The court rejected the evidence. There was a motion to set aside the nonsuit. The court, in deciding the motion, say the evidence was properly rejected, no custom in the sale of any particular description of goods can be admitted to control the general rule of law.

In *Beirne* v. *Dord* (1 Seld., 95), the cause of action arose in New York, and was brought to recover damages for an alleged breach of warranty, on the sale of blankets by the defendant to the plaintiff. On the trial the plaintiff was permitted to prove that it was a custom amongst those engaged in dealing in blankets to sell by sample; that it was not usual to open the bales containing the blankets; but if on opening they were found defective, it was usual for the séller to make an allowance to the purchaser or take them back. The plaintiff had judgment in the Supreme Court of the city of New York, and the defendant appealed to the Court of Appeals. That court reversed the judgment, holding the evidence of the custom to be inadmissible. JEWETT, J., who delivered the opinion of the court, adopts the language of the Supreme Court in *Thompson* v. *Ashton, supra,* as stating the true rule in regard to evidence of custom to control the rules of law.

The case of *Wheeler* v. *Newbold* (16 N. Y., 39?), is, it seems to me, conclusive on the question of the competency of evidence to establish a local custom. The action was brought to recover the amount of certain notes, &c., deposited by plaintiff with defendant as collateral security for a loan.

(8 Barb., 396); 3 Seld., 459; *Bank of Orleans* v. *Smith* (3 Hill., 562); *Commercial Bank of Penn.*v. *The Union Bank*

The defendant offered to prove a custom for persons holding such collaterals to sell them at private sale, within a reasonable time after the debt became due, after notice that such sale would be made. The court excluded the evidence, and on appeal to the Court of Appeals the ruling was affirmed, and evidence of custom held to be incompetent.

In *Higgins* v. *Moore* the action was brought for the price of grain sold by plaintiff to defendant, through a broker in the city of New York. The defence was that the defendant (the purchaser), had paid the broker the price, and offered to prove a custom in the city of New York for buyers thus to pay when the seller resides out of the city. The referee who tried the cause received the evidence, found the existence of the custom, and ordered judgment for the defendant. The Court of Appeals reversed the judgment. PECKHAM, J., after referring to several cases in this State holding that such a custom as that found by the referee could not be proved, proceeds to say: "In this case the law defined the rights and duties of this broker as clearly as it did those of the pledgee of stock in *Allen* v. *Dykers* (7 Hill, 497), or of choses in action, in *Bowen* v. *Newell* (4 Seld., 190), and they could no more be controlled by usage."

WRIGHT, J., in the same case, says: "It is obvious that the rights of the plaintiff cannot be controlled or affected by a local usage in a particular trade found by the referee. The usage is invalid and has no binding force on the plaintiff, for various reasons. It being the law of the State that a broker in general has no authority to sell, in his own name, and, therefore, no authority to receive payment for goods sold by him, a local custom like that found by the referee to exist in the city of New York was void. Such a usage, if sanctioned, would be to overthrow the law in the city of New York. If it prevails there, as the referee has found, it cannot be allowed to control the settled and acknowledged law of the State."

In the case before me the duty of the notary was clearly defined, and perfectly well understood. The custom proposed to be proved relieved him from a part of such duty, and enabled him to transfer its performance to another, in palpable violation of the law, and of the rights of persons whose interests were to be affected by the proper performance of the notary's official duty.

It seems to me that no distinction in principal can be drawn between the cases cited and the one before me.

The only other case to which I shall refer is that of *Duguid* v. *Edwards*, cited *supra*. In that case the plaintiff sued to recover money received by defendants for flour consigned to the defendants living in Albany, for sale in that city. The plaintiff obtained an order of arrest, on the ground that the money sued for had been received in a fiduciary capacity. The defendants, to get rid of the order, showed, by affidavit, that it was a custom.

The Commercial Bank of Kentucky *v*. Varnum.

(1 Kern., 311); *Denney* v. *The Manhattan Co.* (2 Denio. 115, and 5 id., 639); *Calvin* v. *Hobrook* (2 Coms., 126); *Draper*

among persons selling flour on commission to charge the owner, in account, with freights, commissions, etc., and to credit him with avails of sales, thus making such excess over the charges and expenses a mere simple debt, and not money received or held in a fiduciary capacity. The court at the General Term, in the eighth district, on appeal from the order at Special Term, vacating the order of arrest, reversed the decision of the Special Term and vacated the order. DANIELS, J., in delivering the opinion of the court, after stating that notice of the custom was not brought home to the plaintiff, and without it the custom was of no avail, says: " The mere existence of the usage and custom relating to it (the money not being held in a fiduciary capacity) among commission merchants cannot affect their (the plaintiff's) rights, for these are defined and regulated by well settled rules of law, and those rules cannot be abrogated or overthrown, because it may be the custom of the business to which they relate to disregard them."

That the usage or custom itself will not be sufficient to deprive a party of rights otherwise secured by law, is so well established by the decisions as to need only a reference to them to confirm that conclusion.

The following cases are equally conclusive as to the inadmissibility of a custom to override a rule of law: *Woodruff* v. *Merchants' Bank* (25 Wend., 674); *Same* v. *Same*, affirming a judgment of Supreme Court (6 Hill, 176); *Frith* v. *Baker* (2 J. R., 327); *Bowen* v. *Newel* (18 Barb., 391). I must, therefore, reject the evidence of the custom.

The only question remaining to be considered is, whether the demand of the notary, Turney, and protest by him was sufficient; that of Varnum proving insufficient.

The defendant testifies that he was the notary of the Metropolitan Bank; that he was entitled to receive all paper held by said bank, payable in the city, to be presented for acceptance or payment, and if not accepted or paid to be protested; that he was to do this or cause it to be done. The paper in question was received by him from the bank as its notary, and he delivered it to Mr. Turney, his law partner, and who was also a notary public, to be presented at the place of payment. He did not personally present it. He made out and signed a certificate of protest on the 7th of January, 1861. He made out and mailed notice of protest. He also entered the protest, together with a statement of service of notice, in his office record book. The entries were made by clerks in his office. He (V.) signed his own name, and Turney testifies that he presented the bill at the Park Bank, and put his initials on the margin of the entry on the register. The initials signified that he presented the bill. Some years afterward he prepared a certificate of protest, and annexed it to his deposition as a witness on behalf of the present plaintiff, in an action brought by it against the indorser on said bill, in the State of Missouri. This certificate, he thinks,

The Commercial Bank of Kentucky *v.* Varnum.

v. *Arnold* (12 Mass., 450); *Hoard* v. *Garner* (3 Sand. S. C., 179); *Thompson* v. *The Bank of S. Carolina* (3 Hill., S. C., 77); *Amer. Express Co.* v. *Egbert* (21 Indiana, 4); *Reeve* v. *The State Bank of Ohio* (8 Ohio, 465); *Tyson* v. *The State*

---

was made in 1863, and was the same as that made by Varnum, except substituting his name in the place of Varnum's. When V. was in the city, he attended personally to presenting bills, &c., but when he was not, witness or a clerk acted. On the day this bill was delivered to V. for presentment, there were some fifty other bills and notes delivered to him, and it was physically impossible for V. to present them all. Hence the witness and the clerk aided.

Upon this evidence it is certain—

1st. That the paper in question was delivered by the Metropolitan Bank, to be presented by V. himself as its notary.

2d. That when he was in town it was his practice to present paper thus received, personally.

3d. That he assumed to act as notary in making demand, and protesting the paper in question.

4th. That up to the time of bringing the suit against the indorser in Missouri there was no intimation from any quarter that Mr. Turney had anything whatever to do with the presentment or protest of said paper.

5th. That Turney, by putting his initials on the record kept in his office, did not intend it as a noting for protest, but as a memorandum that he had demanded the paper.

6th. It was only after the proceedings of V. were alleged to be defective that Turney announced that he had protested the bill.

Under these circumstances the defendant ought not to be permitted to derive any benefits from the acts of T. If such a practice was tolerated, no man would know to whom to look for the proper presentation and protest of paper, or when his liability as indorser or acceptor was discharged by failure to demand or notify drawers or indorsers. Pressure of business furnishes no reason why a wholesome regulation should be violated, and an act done by a clerk which the law requires to be done by a public officer. If Mr. V. was unable to present all the paper handed to him by the bank, it was competent for him to employ his clerk and partner, both of whom were notaries, to present and protest portions thereof. The law forbids him to protest paper which he has not demanded. The parties interested are presumed to rely on the notary to establish by his own oath the performance of all the duties which, by his certificate he asserts he has performed, and they ought not to be put to the necessity of calling on clerks and partners to establish facts which the law made it the duty of the notary to perform.

In view of all the facts, I am of the opinion that the demand was made by T., not as a notary but as clerk or agent of V., and that V., when he pro-

*Bank of Indiana* (6 Black., 225) ; *Abbott and others* v. *Smith* (4 Ind., 452); Bac. Abr. Tit. Sheriff, H. 4; *Gilbert* v. *Luce* (11 Barb., 91) ; *Camen* v. *Reynolds* (Cowp., 403).

The rule of liability has not been changed by the statute (2 R. S., 284, § 48), and made the defendant, as a notary, liable in this case.

1st. Because if applicable, the *party injured* was well defined in law, as the person to whom the agent owed the duty.

2d. Because the statute was not applicable, the defendant not being chargeable with official misconduct within its meaning, for a mere omission to do an official act arising from misapprehension of the law, and not in itself criminal either because of intentional departure from official duty, or willful refusal or neglect to perform an official act, citing *Turnbull* v. *Martin* (37 How. P. R., 20); *Smith* v. *Cutler* (10 Wend., 589); *Ketchum* v. *Woodruff* (24 Barb., 149);

---

tested the bill, acted upon the demand as being made by himself, through his partner as his clerk, and the protest by T. is not legal evidence in the case.

I have said that it was only after the proceedings of V. were alleged to be defective that T. announced that he had protested the bill. To guard against a construction of this language which would impute bad faith to either Messrs. T. or V. in reference to the protest of Mr. T., I would say that I do not design to impute intentional wrong to either; I only mean to say that the protest by T. was not made known to the parties interested until after the action against the indorser was brought, without imputing or intending to impute any improper or unworthy purpose in delaying to make out the protest. Such a practice, if permitted, would lead to the greatest abuses, however pure and honest the purpose of these gentlemen may have been.

I would be glad to find some legal mode of relieving the defendant from the consequences of following what he undoubtedly believed to be the custom of the notaries in New York, and I shall be gratified if the court that shall review my rulings in this case can so read the law as to relieve him from liability. But sitting in a court of original jurisdiction, permitted to declare, not make the law; to apply, and not overrule the judgment of either co-ordinate or superior courts, I am constrained to hold the defendant liable for the damages sustained by the plaintiff by reason of his failure to present the bill.

Judgment is ordered accordingly.

The Commercial Bank of Kentucky *v.* Varnum.

*Cranston* v. *Exrs. of Kenny* (9 John., 212); *Herrick* v. *Blair* (1 John. Ch., 101); *Chase* v. *Westmore* (13 East, 357); *Ex party Garland* (4 Wallace, 333); *Waters* v. *Whitman* (22 Barb., 595).

The evidence of a custom, as offered, should have been admitted to prove an absence of intentional misconduct, and it was sufficient, if upon a doubtful question an agent followed the prevailing practice. (6 Metcalf, 26; *Chapman* v. *Walton,* 10 Ring., 57; *Levich* v. *Meigs,* Cow., 645; *Lease* v. *Frenben,* 11 East, 348.)

The bill was not due at common law until the 7th of January, and a demand and protest on the 5th of January was nugatory, unless the bill was within the act abolishing days of grace (Ls. 1857, ch. 416; *Griffin* v. *Goff,* 12 John., 423), and no right of action could arise from non-performance of a nugatory and ineffective act. The statute being in derogation of the common law, must be strictly construed. Only such bills, &c., as appear " upon their face " to be payable on a specified day, or in a specified number of days after date, were within the statute, but where computation is *necessary dehors the bill* to ascertain the number of days, the statute had no application.

The protest by Turney was sufficient, a note thereof having been made in his protest book on the same day, though the protest was subsequently drawn up, citing 3 Kent Com., p. 93; Chitty on Bills, 477; Story on do., § 302; *Charter* v. *Bell* (4 Sup., 48); *Orr* v. *Maginnis* (7 East, 359); *Rogers* v. *Stevens* (2 T. R., 713); *Robbins* v. *Gibbins* (1 Maule & S., 271); *Cayuga Co. Bank* v. *Hunt* (2 Hill., 635); *Bailey* v. *Dozier* (6 How., 23). And the protest, it seems, may be drawn up after suit (Brooks Notary, 97), citing also *Cofferthwait* v. *Sheffield* (1 Sand. S. C., 449); *Mechanics' Bank* v. *Merchants' Bank* (6 Metcalf, 13); Chitty on Bills 333, and Am. ed., page 464, notes; *Holliday* v. *Martinett* (20 John., 168); Brooke on the Office of Notary, 100; *Commercial Bank of Ky.* v. *Varnum* (36 Mo., 563); *Cayuga Co. Bank* v. *Bennett,* 5 Hill, 238; Story on Bills, § 302, note;

Byles on do., 203, 204; *Hart* v. *Wilson* (2 Wend., 513); *Leftley* v. *Mills* (4 T. R., 175); *Bank of Rochester* v. *Gray* (2 Hill, 227).

They insisted also, upon the validity of the protest as made by the defendant, claiming that he was not compelled by law to make demand of payment in person, and reviewed at length the cases supposed to hold a contrary doctrine, viz., *Leftley* v. *Mills* (4 T. R., 170); *Onondaga County Bank* v. *Bates* (3 Hill, 53); *Cole* v. *Jessop* (9 Barb., 395); *Sheldon* v. *Benham* (4 Hill, 131); *Gantry* v. *Doane* (48 Barb., 155); *Warwick* v. *Crane* (4 Denio, 465); *Hunt* v. *Maybee* (3 Selden, 266); and citing to this point also, Chitty on Bills, 8th ed., 492 to 497; Brooke on Notaries, 66, 176, 530; 1 Parsons on Bills, 359; *McClane* v. *Fitch* (4 B. Mon., 599); *Nelson* v. *Fotteral* (7 Leigh. R., 179); 3 R. S., 473, 5th ed., §§ 32 to 35 inclusive.

To the point that it was error to exclude evidence of a usage of notaries in New York city, to make demand through their clerks, they cited Chitty on Bills, 493, &c.; Brooke on Notaries, 66; *Remer* v. *Bank of Columbia* (9 Wheat., 581); *Mills* v. *Bank of U. S.* (11 Wheat., 431); *Bank of Washington* v. *Triplett* (1 Pet., 25); *Merchants' Bank* v. *Woodruff* (25 Wend., 674); S. C., 6 Hill, 174; *Kilgore* v. *Bulkley* (14 Conn., 372); *Cubbs* v. *Adams* (13 Gray, 397); 1 Greenleaf Ev., §§ 292 and note, 488; 2 do., § 279; *Hinton* v. *Locke* (5 Hill., 437); *Dalton* v. *Daniels* (2 Hill, 472); *Bowen* v. *Newell* (4 Seld., 190); S. C., 2 Duer, 584; S. C., 3 Kern., 290; *Kilgore* v. *Buckley* (14 Conn., 362); *Otsego Co. Bank* v. *Warren* (18 Barb., 290); *Mechanics' Bank of Baltimore* v. *Merchants' Bank of Boston* (6 Met., 13); *Warwick* v. *Crane* (4 Denio, 460); *Bank of Rochester* v. *Gray* (2 Hill, 227); *Nelson* v. *Fetteaie* (7 Leigh., 179); *Sacrider* v. *Brown* (3 M. L., 243); *Mittenberger* v. *Spaulding* (33 Missouri, 421); *Cubbs* v. *Adams* (13 Gray, 397); Edward's on Bills, 508, and cases; Story on Notes, § 222, on Bills, § 34; *Hinton* v. *Lock* (5 Hill, 437); *Outwater* v. *Nelson* (20 Barb., 29); *Wadsworth* v. *Alcott* (6 N. Y., 64).

The Commercial Bank of Kentucky *v.* Varnum.

*W. C. Barrett,* for the respondent, contended among other matters, that the defendant could not delegate his powers as a notary to another, and that the notary who presents a bill must protest it, and cannot depute another to perform either act, and that the note not having been personally presented by the defendant the protest was void, citing Story on Agency, § 14; *Ess* v. *Truscott* (2 Mees. & W., 385); *Powell* v. *Tuttle* (3 N. Y., 396, 407); *Newton* v. *Bronson* (13 N. Y., 593); *Onondaga Bank* v. *Bates* (3 Hill, 53); *Chenowith* v. *Chamberlain* (6 B. Mon., 60); *Charmichael* v. *Bank of Penn.* (4 How., Miss., 567); *Sacrider* v. *Brown* (3 McL., 48); *Coml. Bank* v. *Barksdale* (36 Mo., 563).

As to the inadmissibility of the evidence of custom he cited, *Allen* v. *Merchs. Bank* (15 Wend., 482); *Edie* v. *East India Co.* (2 Burr., 1216); *Bowen* v. *Newell* (8 N. Y., 190); *United States* v. *Buchanan* (8 How. U. S., 83, 102); *Beirne* v. *Dord* (5 N. Y., 102); *Otsego Bank* v. *Warren* (18 Barb., 291); *Suydam* v. *Clark* (2 Sandf., 133); *Brown* v. *Jackson* (2 Wash. C. C., 24); *Cox* v. *Haisley* (20 Penn. St., 245).

To the point that the evidence of custom was insufficient, as not being either reasonable, known to the plaintiff, or uniform or general (Civil Code, § 2021, and cases cited); *Bowen* v. *Stoddard* (10 Metc., 30); *U. S.* v. *Buchanan* (8 How. U. S., 102); *Cafe* v. *Dodd* (13 Penn. St., 33, 37); *Lewis* v. *Marshall* (7 M & G., 745).

To the point that the defendant was guilty of official misconduct, *Adsit* v. *Brady* (4 Hill, 630); *Robinson* v. *Chamberlain* (34 N. Y., 389); *Newell* v. *Wright* (3 Allen, 171); *Henley* v. *Lyme Regis* (5 Bing., 91); *Clark* v. *Miller* (47 Barb., 38); *Phillips* v. *Commonwealth* (44 Penn. St., 187); 2 R. S., 284, § 48.

To show that the defendant was liable to the plaintiff, he cited *Faben* v. *Mercantile B'k* (23 Pick., 332); *Warren Bank* v. *Suffolk Bank* (10 Cush., 582); *East Haddam Bank* v. *Scorvier* (12 Conn., 30); *Bellenoie* v. *Bank of U. S.* (4 Whart., 105); *Jackson* v. *Union Bank* (6 Harr. & J., 146); *Citizens'*

*Bank* v. *Howell* (8 Md., 530); *Tieman* v. *Coml. Bank* (7 How., Miss., 648); *Bowling* v. *Arthur* (34 Miss., 41); *Baldwin* v. *Bank of La.* (1 La. Am., 13); *Frazier* v. *New Orleans Gas Co.* (2 Rob., La., 294); *Agricultural Bank* v. *Coml. Bank* (7 Smedes & M., 592); *Ætna Ins. Co.* v. *Alton Bank* (26 Ill., 243); *Allen* v. *Merchs. Bank* (22 Wend., 215); S. C., 15 id., 482; *Amer. Express Co.* v. *Egbert* (21 Ind., 4); *Raney* v. *Weed* (3 Sandf., 584); *Phelps* v. *Wait* (30 N. Y., 78); *Foster* v. *Preston* (8 Cow., 198); Story on Agency, § 201, 217a.

Present—INGRAHAM, P. J., CARDOZO and GEORGE G. BAR-NARD, JJ.

By the Court—CARDOZO, J. It was properly conceded on the argument that the draft sued on is a foreign bill, and that in order to charge the indorser, presentment and protest in case of non-payment, must be made by a notary public.

In addition to the authorities mentioned in the opinion of Judge MULLIN, reference may be made to Brooke on the office of notary public, pages 69 and 133.

Mr. Turney being a notary, could of course have presented the draft, and upon its non-payment might have made the protest. The trouble is, that he did not. He presented the draft, but he did not do what was necessary in respect to a foreign bill upon payment being refused. He neither drew up the formal protest, nor made a note or minute upon the face of the bill, sometimes termed an incipient protest, which last mentioned act would have been sufficient if he had made up the formal protest before suit brought. (Brooke, p. 72.)

What Mr. Turney did, is therefore, of no consequence, because it is quite too late to assert that any part of the official duty of a notary can be delegated. (*Onondaga Bank* v. *Bates*, 3 Hill, 53.)

When the instrumentality of a notary, as in respect to a promissory note or inland bill, is not indispensable, and as to which the functions which he ordinarily exercises may be per-

formed by any individual with equal effect as if done by a public officer, it only becomes a question of requisite proof on the trial (*Gawtry* v. *Doane*, 48 Barb., 155) ; but that does not apply to the case of a foreign bill in respect to which the action of a notary is needed in order to fix the liability of the indorser.

The law having determined what the duty of a notary in regard to a foreign bill is, evidence of a custom among notaries contrary to that duty was inadmissible. The cases cited by Justice MULLIN, render further examination of that subject unnecessary.

Whatever may be said of the right of the plaintiff to maintain this action independent of the statute (3 R. S., 5th ed., 474, § 37), in regard to which I fully concur with Judge MULLIN, I think there can be no doubt of their right to sue the defendant under the statue upon the ground of official misconduct. He was a public officer, and undertook to perform an official duty and neglected it. That is misconduct, for which an action lies.

There is no force in the objection that section two of the act of April 14, 1857 (S. L. 1857, chap. 416), does not cover such a bill as the one in question.

The act plainly meant to provide that days of grace should not attach to a draft appearing on its face to be drawn on a bank whether payable on a day expressly designated or to be ascertained by mere calculation.

There was no error committed on the trial, and the judgment below must be affirmed.